JaSHORTESS, Judge.
On June 11,1976, Robert Wesley (plaintiff) visited Dr. Lynne Alexander (defendant), a dermatologist, for actinic keratosis, which are sun-damaged spots that are pre-cancerous. Plaintiff had been treated two years previously for this problem in Hattiesburg, Mississippi. However, when plaintiff visited defendant, he had problems on his nose, left lower lip, and left temple. Over the next approximately fifteen years, defendant continued to treat plaintiff for these problems when each arose by having plaintiff either apply a dermatology cream or removing the lesions with liquid nitrogen. In February 1992, defendant treated spots on plaintiffs hand and on his lower lip (this spot was removed using liquid nitrogen). In October 1992, the bump on his lip appeared again, and defendant again removed it with liquid nitrogen. In November 1992, the bump returned, so defendant performed surgery (a desiccation and curettage or D & C), and she sent the tissue to the pathologist. The report of the pathologist dated December 1992 had a diagnosis of papular pre-cancerous dysplasia.
In June 1993, another growth appeared, and defendant performed another D & C and sent tissue to the pathologist. The diagnosis was inflamed dysplastic pre-cancerous or seborrhea keratosis.[1] In August 1993, defendant began to watch another area, the center of the lip, which had “raw skin.” In November 1993, she treated this spot with liquid nitrogen; then in January 1994, she performed another D & C and sent tissue to the pathologist. This report diagnosed the tissue as cancerous.
In March 1994, defendant treated plaintiffs forehead for actinic keratosis and continued to watch his lip. In May 1994, plaintiff visited defendant for the last time, and she referred him to a plastic surgeon. In June 1994, plaintiff suffered from depression and was committed to. a mental facility. Plaintiffs son, Brady Wesley, visited defendant and explained he was taking his father to live with him in Denver. Defendant informed Brady that his father, had cancer of the lip. In Denver, Brady took his father to a cancer specialist, upon the recommendation of a dermatologist, who recommended surgery. At plaintiffs request, surgery was performed “at home” |3in Louisiana by Dr. Herbert W. Marks. Plaintiff underwent a lip resection with reconstruction, neck dissection on the left, and a partial mandibulectomy. He also underwent radiation therapy.
On September 11, 1995, plaintiff filed a petition with the , Medical Review Panel.[2] Trial was held on November 18, 1996, and the jury returned a verdict in favor of defen *596 dants, Alexander and the Louisiana Patient’s Compensation Fund Oversight Board. Plaintiff appeals this ruling.
ARGUMENT
Plaintiff contends the jury did not properly weigh the evidence and testimony presented at trial, and the jury was clearly wrong in finding defendant’s actions and/or neglect were not the proximate cause of plaintiffs injuries and damages.
Medical malpractice is defined by Louisiana Revised Statute 40:1299.41(A)(8) as:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
Plaintiff cites Revised Statute 9:2794(A), which establishes the burden of proof necessary for a malpractice claim. The statute provides, in pertinent part, that a plaintiff must prove by a preponderance Of the - evidence:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a ’ dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
14(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
However, Stobart v. State[3] establishes that when reviewing, factual findings on appeal, a court of appeal may not set aside a jury’s finding of fact unless the finding is manifestly erroneous or unless it is clearly wrong; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. When a jury is presented with two permissible views, its choice between them cannot be manifestly erroneous.
Plaintiff contends the jury did not properly weigh the, evidence and was erroneous in finding defendant’s actions and/or neglect were not the proximate cause of plaintiff’s injuries and damages. Plaintiff strongly argues that the testimony of his medical experts Dr. Herbert W. Marks [4] and Dr. Mary Lupo[5] (their depositions were read at trial) supports his contention.
Marks stated lip cancers are very treacherous and must bé' treated aggressively. Marks also stated the surgery would not have been as extensive or intense had it been *597 performed sooner. Lupo also testified, cancer of the lip should be treated more aggressively. She stated that when the January 1994 pathology report noted cancer, she would have performed a biopsy and strongly considered a more aggressive surgical procedure, like a lip wedge.
Defendant called no expert witnesses. She provided her own testimony, which showed that over the years, plaintiff had a history of sun-damaged lesions, actinic keratosis (precancerous lesions), which she treated; that these lesions extended from plaintiffs head, face, lip, neck, and hands; that when the “bump” initially occurred in February 1992, she carefully watched and treated it with liquid nitrogen; that she performed a D & C in November 1992 and another in June 1993; and that both times the pathology reports stated the tissue was pre-cancerous.
|5Pefendant further testified that in August 1993 she noticed a denude (raw) area in the center of plaintiffs lip (in an area different from the place she had previously treated); that on November 12, 1993, she treated it with liquid nitrogen; that in January 1994 she performed another D & C; that the pathology report from this D .& C stated the tissue was cancerous, yet she thought she had removed all of the tissue and was basically watching the area; that when the “bump” returned in May 1994 she met with plaintiff and his daughter and informed them plaintiff had cancer; that she referred plaintiff to a plastic surgeon and told him to call her thereafter; that she told plaintiffs son Brady in June that plaintiff had cancer and should visit a plastic surgeon; and that, unfortunately, due to depression and other problems, plaintiff did not visit a physician until August 1994.
Marks stated the removal of the lesion on the lip involved reconstructing it; therefore, defendant’s referring plaintiff to a plastic surgeon was a proper medical referral because this type surgery was needed. In addition, Marks stated plaintiff did not find the lump in his neck until June 1994, which was after his last visit with defendant in May. Marks was not able to determine whether the lump would have been visible during May 1994 when plaintiff visited defendant. Furthermore, Marks was not able to determine how rapidly the lesion on the lip grew or when the growth in plaintiffs neck metastasized (became a secondary growth resulting from a transfer of cells of a malignant tumor), for this could have occurred after plaintiffs last visit with defendant.
Plaintiffs experts stated they would have been more aggressive- in treating plaintiff. Defendant had treated plaintiff for many years, and her conservative clinical treatment had been very successful. A jury under these circumstances could have credited defendant’s testimony more than that of plaintiffs witnesses. Because her defense was reasonable, it satisfied the Stobart test. An equally reasonable jury may have credited plaintiffs witnesses more heavily, but that did not happen here. In Lefort v. Venable,[6] we held:
The physician’s conduct is evaluated in terms of reasonableness under the circumstances existing when his professional judgment was exercised. The physician will not be held to a standard of perfection nor evaluated with benefit of hindsight. |6Opinions from medical experts are necessary to determine both the applicable standard of care, and whether that standard was breached. It is for the trier of fact to evaluate conflicting expert opinions in relation to all the circumstances of the case.
(Citations omitted.) Based upon all the evidence in the record, we do not find manifest error in the jury’s verdict in favor of defendant.
Defendant’s answer to the appeal is moot.
CONCLUSION
For the reasons stated above, we find the trial court was not clearly wrong in finding in favor of defendant. We affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiff.
AFFIRMED.

. These cells were a different form of the previous pre-cancerous tissue.

. Plaintiff settled his case against defendant and her insurer. He reserved his right to seek additional damages over $100,000.00 from the Patient’s Compensation Fund Oversight Board.

. 617 So.2d 880 (La. 1993).

. Dr. Marks actually performed plaintiffs surgery in August 1994. Marks is a board certified E.N.T. practicing in Metairie, LA.

.Dr. Lupo is a dermatologist practicing in New Orleans, LA.

. 95-2345, 95-2346, p. 4 (La.App. 1st Cir. 6/28/96), 676 So.2d 218, 220.